UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC.,<br><br>Plaintiff<br><br>v.<br><br>SUSAN IRENE POMBO, et al.,<br><br>Defendants | CASE NO. 1:11-CV-1879 AWI GSA<br><br>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This is a case involving the unauthorized broadcast of a pay-per-view boxing match. Plaintiff J&J Sports Productions ("J&J") has brought suit against Defendants Susan and Tony Pombo ("Pombos") and seeks damages under 47 U.S.C. § 605(e)(3)(c)(i)(II) and § 605(e)(3)(c)(ii) and state law conversion. J&J now moves for summary judgment on the issues of liability and damages. The Pombos have filed a notice of non-opposition as to liability, but oppose the amount of damages to be awarded. For the reasons that follow, J&J's motion will be granted.

**BACKGROUND**

On November 13, 2010, J&J was granted the exclusive commercial distribution rights to a nationwide telecast of a boxing match that was billed a "Tactical Warfare: Manny Pacquiao v. Antonio Margarito" (hereinafter "the Bout"). See PUMF 1.[1]

---

[1] "PUMF" refers to Plaintiff's Undisputed Material Facts.

1     The Pombos are the owners and operators of a commercial establishment known as
2 "Extreme Pizza" located in Fresno, California. See PUMF 2. On November 13, 2010, the
3 Pombos invited family and friends to their home in order to watch the Bout. See Pombo Dec. ¶ 4.[2]
4 The Pombos ordered the Bout through their home satellite provider, DirecTV. See id. at ¶ 5. The
5 Pombos' guests totaled between 25 and 30 people. See id. Because of the large number of guests,
6 the Pombos decided to go to their restaurant, Extreme Pizza, and watch the Bout in a semi-private
7 room. See id.

8     The semi-private room at Extreme Pizza was wired for DirecTV, although cable and
9 satellite programming was not being shown at the time. See id. The Pombos took the DirecTV
10 box from their home and attached the box to the cables at Extreme Pizza. See id. at ¶ 6. The box
11 picked up the Bout, and the Pombos and their guests were able to see the Bout in the semi-private
12 room in the back of Extreme Pizza. See id.

13    Extreme Pizza was open for business as the Pombos and their family watched the Bout, but
14 at no times were customers allowed into the semi-private room. See id. at ¶ 7. Because of the
15 placement of the television, it is not possible to see the television in the semi-private room from
16 other parts of the restaurant unless one actually walks into the semi-private room. See id. Nobody
17 was allowed in the room because it was being referred to as a "Private Party." See id. The
18 Pombos did not charge their family to watch the Bout, the Pombos did not invite any customers to
19 watch the Bout, and although they provided food for their guests, the Pombos did not charge for
20 the food. See id. at ¶ 9. There were no postings or advertisements that the Bout would be shown
21 at Extreme Pizza. See id. at ¶ 10. The Pombos only told their friends and family that the Bout
22 would be shown at their home, and it was only a last minute decision to watch the Bout at Extreme
23 Pizza. See id. at ¶ 10. After the festivities ended, the Pombos took their DirecTV box back to
24 their home and reattached it to their satellite. See id. J&J did not authorize the Pombos to
25 broadcast the Bout at Extreme Pizza. See PUMF 4. The Pombos never purchased a commercial
26 license from J&J that would have permitted them to exhibit the Bout. See id.

---

[2] The Court notes that J&J filed no reply or response of any kind to the Pombo's opposition or to Tony Pombo's declaration.

1  The Pombos did not know what a licensing fee was or who J&J was, rather, all they knew
2  was that they had ordered a pay-per-view fight for a fee and watched the fight with family.  See id.
3  at ¶ 11.[3]  The Pombos did not show the Bout at Extreme Pizza for financial gain for a nefarious
4  purpose.  See id. at ¶ 13.  Extreme Pizza grossed just over $800 on November 13, 2010.  See id.
5  The Pombos did not know that their actions may have been unlawful, and their actions were
6  simply a mistake based on lack of knowledge and misinformation.  See id. at ¶ 14.

7  The J&J investigators who came to Extreme Pizza informed the restaurant employees that
8  they were investigating an armed robbery, that they walked around the restaurant and behind
9  counters in order to enter the semi-private room, and once they entered the semi-private room
10  were immediately asked to leave.  See id. at ¶ 8.

## SUMMARY JUDGMENT FRAMEWORK

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle

---

[3] PUMF 5 states that the Pombos were aware that a licensing fee had to be paid to J&J in order to telecast the Bout at Extreme Pizza.  See PUMF 5.  J&J cites the Pombos' responses to Requests for Admission Nos. 1 and 2 as support for PUMF 5.  However, Requests for Admission 1 and 2 stated:  (1) You did not order [the Bout] for [Extreme Pizza] from [J&J]; and (2) Neither you nor anyone else ordered [the Bout] for [Extreme Pizza] from [J&J].  See Riley Dec. Ex. 1.  Requests for Admission 1 and 2 have nothing to do with the Pombos' knowledge.  PUMF 5 is unsupported, and the Court will not consider it.

1  Network, 626 F.3d 509, 514 (9th Cir. 2010).  The opposing party's evidence is to be believed, and
2  all reasonable inferences that may be drawn from the facts placed before the court must be drawn
3  in favor of the opposing party.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587;
4  Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).

## DEFENDANTS' MOTION

*Plaintiff's Arguments*

J&J argues that there is no dispute that the Pombos are liable under 47 U.S.C. § 605. There was a DirecTV satellite dish at Extreme Pizza, and the Pombos utilized their residential satellite technology to receive the Bout.  J&J had the exclusive distribution rights to the Bout, and the Pombos did not contact J&J in order to lawfully show the Bout at Extreme Pizza.  Investigator Mitch Gerking observed the broadcast of the Bout at Extreme Pizza.  Because § 605 is a strict liability statute, the Pombos are liable.  J&J also argues that summary judgment on the conversion claim is appropriate.  Exclusive commercial rights are a type of property, and courts facing similar cases routinely award damages for conversion.

J&J argues an award of $2,200 is appropriate for conversion, as this is the amount that would have been charged to an establishment like Extreme Pizza.  In terms of § 605 damages, Although the caption of the motion indicates that maximum damages are sought, J&J asks the Court to consider the size of Extreme Pizza (which could seat between 40 and 50 patrons) and the number of persons inside Extreme Pizza (20 patrons) in making a damages award.  In similar cases, maximum statutory damages of $10,000 and enhanced damages of $30,000 have been awarded.  Here, there is ample authority for the proposition that the Pombos acted for financial gain and that there actions were not inadvertent.

*Defendants' Opposition*

The Pombos argue that they do not contest liability.  However, they argue that they did not intend to violate the law or to harm J&J.  Although $2,200 in conversion damages is appropriate, an award of only $250 under 49 U.S.C. § 605(e)(3)(c)(iii) is appropriate.  This section permits a court to reduce an award of damages if a violator was not aware and had no reason to believe that

his acts constituted a violation. There was no willful violation of § 605, there was only a private viewing with the Pombos and their family and friends, and the Bout was not visible. The only way the investigator saw the Bout on the television was by giving a false story. A total damage award of $2,450 is appropriate.

*Legal Standards*

47 U.S.C. § 605(a) prohibits the unauthorized receipt, publication, or use of satellite cable programming. See DirecTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008); J&J Sports Prods. v. Coyne, 857 F.Supp.2d 909, 913 (N.D. Cal. 2012). An aggrieved party may bring a civil action in federal court, and is permitted to elect either statutory or actual damages. See 47 U.S.C. § 605(e)(3)(C)(i); Coyne, 857 F.Supp.2d at 913-14. An aggrieved party may "recover statutory damages for each violation of [§ 605(a)] involved in the action in a sum of not less than $1,000 or more than $10,000 as the court considers just . . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II); see Kingvision Pay-Per-View Ltd. v. Backman, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000). Further, in a case where a violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000 for each violation of [§ 605(a)]." 47 U.S.C. § 605(e)(3)(C)(ii); see Backman, 102 F.Supp.2d at 1198. However, "[i]n any case where the court finds the violator was not aware and had no reason to believe that his acts constituted a violation of [§ 605(a)], the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. § 605(e)(3)(C)(iii); DirecTV, Inc. v. Boonstra, 302 F.Supp.2d 822, 830 (W.D. Mich. 2004).

*Discussion*

a.   Conversion

Conversion damages are often awarded in signal interception cases. E.g., DirecTV, Inc. v. Pahnke, 405 F.Supp.2d 1182, 1189-90 (E.D. Cal. 2005). The Pombos concede their liability for the tort of conversion and that value of the converted transmission was $2,200. See Doc. No. 14 at 4:5. Due to the Pombos' concession as to both liability and damages, the summary judgment in the amount of $2,200 is appropriate on this claim.

1         b.     47 U.S.C. § 605

2       The Pombos concede liability for the § 605(a) cause of action. The only issue is damages.

3 After considering the arguments and the evidence presented, the Court finds that no enhanced

4 damages are warranted and that an award of $250 under § 650(e)(3)(iii) is appropriate.

5       The declaration of Tony Pombo is essentially uncontradicted.[4] That declaration shows that

6 Pombo and his family went to Extreme Pizza to watch the Bout on the spur of the moment. The

7 Pombos had already purchased the Bout through DirecTV in anticipation of their guests' arrival.

8 It appears that the only reason the Pombos went to Extreme Pizza was out of a last minute concern

9 about the number of guests. The declaration shows that the Bout was never promoted at Extreme

10 Pizza, could not be seen from the main dining room,[5] was on one television, no one who watched

11 the fight was charged for any food or drinks, and that the only people allowed to watch the Bout

12 were family and friends who had originally been invited to the Pombos' home to watch the Bout.

13 The Court sees no willful violations by the Pombos. Further, if the only people watching the fight

14 were not paying for food or drink in a restaurant, then there could be no commercial or private

15 advantage to the Pombos. Therefore, the Court will not award § 605(e)(3)(ii) enhanced damages.

16       Even without enhanced damages, the Court must still award some damages for the

17 conceded violation of § 605(a). As discussed above, a willful violation of § 605(a) is not

18 apparent. Further, given the facts that the Bout had already been purchased at the Pombos' home

19 and that the change in locale was a last minute decision after family had arrived, and given Tony

20 Pombo's uncontradicted declaration that he did not know that a special license was necessary, the

---

[4] J&J indicates that Investigator Gerking's declaration is sufficient to show commercial gain. The Court disagrees. The Gerking Declaration indicates that 20 "patrons" were in Extreme Pizza. However, Gerking's declaration does not indicate that the "patrons" were watching the fight, and Pombo's declaration shows that the only people watching the fight were his friends and/or family members and that they did not pay for any refreshments. The Court also notes J&J does not dispute the assertion that Gerking used false pretenses to enter and remain in Extreme Pizza.

[5] Gerking's declaration indicates that he could see the television upon entering Extreme Pizza. However, Pombo's declaration indicates that one could not see the television, and that Gerking lied to Extreme Pizza employees in order to get a view of the television. Further, although Gerking attached photographs of Extreme Pizza to his declaration, in none of the photographs is the television visible. If the television was immediately visible upon entry, then a photograph of the television should have been easily obtained. As the non-moving party, the Pombos' evidence is believed and all reasonable inferences are made in their favor. See Stegall, 350 F.3d at 1065. Nevertheless, even if Gerking could see the fight when he first walked in, his declaration does not contradict Pombo's declaration that the only people watching the Bout were friends and family who did not pay for food or drink, and that the decision to show the Bout at Extreme Pizza was made at the last minute and out of a concern for space.

court finds that the Pombos were not aware and had no reason to believe that their acts constituted a violation of § 605(a). See 47 U.S.C. § 605(e)(3)(C)(iii); Boonstra, 302 F.Supp.2d at 830. Further, this appears to be the Pombos' first violation of § 605(a). Under these circumstances, the minimum amount of statutory damages is appropriate. Therefore, the Court will award J&J $250 pursuant to § 605(e)(3)(C)(iii). See id.

## CONCLUSION

J&J moves for summary judgment on its conversion and 47 U.S.C. § 605(a) claims, and asks the Court to award it damages. Because the Pombos concede liability, summary judgment for J&J is proper. However, the evidence does not support an award of damages at the statutory maximum amounts. J&J never responded to the Pombo declaration, and that declaration shows that enhanced damages are not appropriate, and that an award of $250 for the § 605(a) violation is proper. Because the Pombos concede that $2,200 for the conversion claim is proper, the Court will grant J&J summary judgment and award a total of $2,450.00 in damages.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is GRANTED;
2. Plaintiff is awarded $250 for violation of 47 U.S.C. § 605(a) and $2,200 for state law conversion damages; and
3. The Clerk shall enter judgment for Plaintiff consistent with this order and CLOSE this case.

IT IS SO ORDERED.

Dated:   October 22, 2013                              _____
                                                      SENIOR DISTRICT JUDGE